## APPEAL OF THOMAS H. DRENNAN.

FROM THE DECREE OF THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued October 26, 1887—Decided January 3, 1888.

A testator's will gave to his wife and son all his real estate and personal property thereon during his wife's natural life, "by their complying" with certain bequests to his daughters. At the decease of his wife, a part of the real estate was given to the son, the other part to the daughters: *Held*,

1. That the will disposing fully of all the estate except the personal prop-

erty, some of which was consumable in its nature, with no bequest over of any of it, the gift of the personalty to the wife and son was absolute.

2. The Supreme Court shall in all cases of appeal from the definitive sentence or decree of the Orphans' Court, hear and determine the same as to right and justice may belong: § 4, act April 14, 1835, P. L. 275.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 62 October Term 1887, Sup. Ct.; court below, No. 90 June Term 1886, O. C.

William M. Drennan of Elizabeth township, died on June 11, 1857, leaving a will dated February 27, 1857, duly probated, the disposing provisions of which were the following:

First: After all my lawful debts are paid and discharged the residue of my estate, real and personal, I give, bequeath and dispose of as follows:

I will that my sister Isabella remain with my family, sustaining the same relation as heretofore.

I will and bequeath all my real estate and personal property thereon to my beloved wife Margaret and my son Thomas Henry, during my wife's natural life by their complying with the following bequests, viz.: That they give to each of my daughters, Isabella Jane, Esther Mary and Emily D., now at home, an outfit equal to my daughter Martha Powers, supposed to be worth about three hundred dollars, at such time as they may wish to leave home, with the express understanding that they remain at home as now so long as they may desire. At the decease of my wife I will and bequeath the southeast side of my farm, starting at a thorn bush on Crawford andHowel's corner, running in a straight line to west end of lane; thence down said lane to the southwest corner of the orchard fence; up said fence to the northwest corner; thence parallel with orchard fence about northeast to a large sugar tree, standing on a line of the said Thomas Patterson, north of the spring, with all the buildings thereon, to my son, Thomas Henry.

I give and bequeath also, after my wife's decease the west side of my farm as above divided, to my daughters, Martha (married to J. F. Powers), Isabella Jane, Esther Mary and Emily D., equal shares, with the express understanding that my son, Thomas Henry, have the refusal of either share at any

time he may feel able to buy, at such price as five judicious men, chosen by parties, may put upon it.

I will and bequeath to my four daughters, Martha Powers, Isabella Jane, Esther Mary and Emily D., my money now at interest, supposed to be about Nineteen or Twenty hundred dollars, to be equally divided between them, the two first named to receive theirs within or at the expiration of one year from my decease. The two last named to be kept at interest till they become respectively of age, the interest to be applied at the discretion of their mother for their benefit.

The bequests made to my wife in the foregoing statement are in lieu of her right of dower. Should any difference of opinion arise in regard to any bequest, or part thereof, said difference shall be referred to a committee, composed of Ebenezer Henderson and John Patterson, whose decision shall be final. The words "fence up said fence to northwest corner," interlined before signing.

Likewise, I make, constitute and appoint my said son, Thomas Henry, and my neighbor, David Nicholl, to be executors of this, my last Will and Testament.

Letters testamentary upon this will were issued to Thomas H. Drennan, who filed his first account as executor to No. 15 October Term 1858, in which he was charged with the appraised value of the personal property of which his father died possessed, and was credited with the payment of debts and expenses and with the allotment to himself and his mother Margaret Drennan, of $865.31 each, thereby balancing the account. This account was confirmed absolutely.

After the testator's death, his family, then consisting of the accountant, his mother, three sisters then unmarried, and an aunt, continued living together at the homestead. Margaret Drennan, the mother, died October 7, 1882, intestate. On October 18, 1885, upon the petition of the three sisters to No. 245 September Term 1885, a citation was awarded resulting in an order upon the executor on March 1, 1886, to file an account of the personal estate of Wm. M. Drennan, deceased, within ten days. In this account the executor charged himself with the personalty of said decedent amounting to $1,730.62, and claimed credit for many articles worn out or consumed,

disbursements by way of outfit to two sisters, then married, a monument, counsel fees and allowance for services, etc., showing a balance due the accountant of $675.33. To this account exceptions were filed by the sisters: (1) that the accountant had not charged himself with interest on the amount in his hands from the date of his mother's death. (2) That he was not entitled to any credits against the amount of the estate charged.

On the adjudication of this account and the said exceptions thereto, the court, HAWKINS, P. J., on December 18, 1886, filed the following opinion:

The exceptions filed in this case raise the question of the liability of Thomas H. Drennan as executor of the will of William H. Drennan, deceased, for certain personal property bequeathed for the lifetime of Mrs. Margaret Drennan, widow of said testator. The material facts are these:

William H. Drennan died in 1857, leaving a will in which he provided as follows. . . . . .

The personal property on the farm as above, consisted of farming implements and stock, which was inventoried at $1,264.00, and household furniture, which was inventoried at $211.55.

Thomas H. Drennan, who was appointed executor of this will, filed an account at October Term 1858, in which he charged himself with the amount of the inventory, including the personal property above mentioned, and claimed credit inter alia as follows: "Margaret Drennan, as directed in will, $865.31. Accountant retains to himself, $865.31."

It is admitted that these credits represent the personal property on the farm. The accountant took Mrs. Drennan's receipt for the amount credited to her as above, but in fact never paid the same to her in cash, nor delivered the personal property in specie. The accountant took into his exclusive possession and control the farming implements and stock which constituted part of this personal property, and kept them as is customary with farmers up until his mother's death in 1882. The household furniture was used in common by accountant and his mother and the family until, with the exception of a few articles, it was worn out. Since his mother's death

Thomas H: Drennan has as administrator of her estate filed an inventory, and an account in which this personal property is not valued or embraced. Of the three daughters mentioned in the will as being at home, one married, received her outfit and left the fall after her father's death, and another in 1862; and the third remains unmarried and in the old homestead.

The accountant, besides the claims of credit to his mother and self, claims credit for the outfits given his sisters, for services as trustee for twenty-five years, $250, and counsel fees of counsel, $50, to which objection is made.

The liability of accountant in this form of procedure depends upon the solution of three questions of law.

1. Was there intestacy in respect of the personal property on the farm after the death of Mrs. Drennan?

2. How far was the confirmation of the first account of the executor conclusive of the conversion of the personal property and of distribution; and

3. Has the trust relation of the executor in respect of the fund continued since for those in remainder.

1. The intention of the testator seems clear to give Mrs. and Thomas H. Drennan no more than an interest in the personal property during the life of Mrs. Drennan. The gift is expressly limited to the life of Mrs. Drennan; the limitation is legal and should be made operative. The testator must be presumed to have meant what he said: Hancock's App., 112 Pa. 532. So the gifts of the " personal property," having been blended with an effective devise of the farm for life, must logically have been expressive of the same purpose: Morrison v. Semple, 6 Binn. 98. The testator evidently connected in his mind the use of the farm with the use of the " personal property thereon," as he had been accustomed to do. His primary object was to enable his widow to continue and maintain their home during her life; and with that view blended the farm and the " personal property thereon," as with a breath, in one gift: Flowers v. Franklin, 5 W. 265.

That he joined his son with the widow was in all probability intended as a continuance in and of this. The gift to the son was limited in duration, not by his own life, but by that of the widow, an estate per autre vie, and was consequently of less

value.　At common law, 4 Kent Com., 26, on the death of the tenant per autre vie before the cestuis que vie, he who first entered, although a stranger, had a right to hold until the death of the cestuis que vie.　The estate was incapable of inheritance, and therefore of enlargement by operation of law.　And the reason was because the land had no legal owner.　For it did not revert to the grantee, as he had parted with all his interest as long as the cestuis que vie lived.　It did not escheat to the lord, for all his escheat must be of the absolute and entire fee.　It did not belong to the grantee, for he was dead. It did not descend to the heirs, for there were no words of inheritance in the grant, nor could it vest in his executors, for they cannot succeed to a freehold.　The land, therefore, having no legal owner, the law of nature took place, and gave it to the first person who could enter on it as occupant: 1 Coke Inst., 626 and n.　The statutes 29 Ch. II., c. 3, 12 and 14 Geo. II., c. 20, s. 9, took away the rights of occupancy and made estates pur autre vie pass by devise or succession during the life of the cestuis que vie.　But there is nothing in the nature of the estate, nor in those statutes, and no principle has been found in the books, which would enlarge that estate into an absolute ownership, because of the absence of a gift over.　It has no analogy in this respect to the gift for the life of the beneficiary without a gift over, by which the idea of succession, and therefore of absolute interest, is naturally suggested.　But the testator here did not have in contemplation the death of Thomas H. Drennan, but rather the termination of his interest in his own lifetime, and therefore had no order of succession in view.　The event which was to terminate his son's interest did in fact happen in his son's lifetime; and the primary object which the testator had in view was then accomplished.　If the interest of the son could not extend beyond that event, that of the widow could not; for by the express terms of the will they were made joint and of the same duration.

The personal property on the farm was essential to the secondary object which testator had in view as to the first. There was no express disposition over; but it is obvious that it was connected in his mind with the farm; and it was as necessary to the use of that part of the farm which was given to the daughters as to that part given to the son, in remainder.

Even were the construction doubtful, that must be adopted which is most in consonance with the statute of distribution. But it is said that the daughters' "outfit" was charged upon and payable out of this "personal property," and that consequently when each received her "outfit," she received her share. If these outfits were charged on the "personal property," they were also charged on the real estate, of which there was an effective devise for life. The two classes of property having been blended in one gift for life, the natural inference is that the testator had the same intention in respect of them, and that the absence of a gift of the property over was an accidental omission. The furnishment of the "outfit" was intended rather as a condition upon which the property should be enjoyed for the life of the widow than a charge upon it. It is evident that the family relation was to be continued and maintained. The daughters by the express terms of the will were to constitute part of the family until marriage, and of course contribute their share towards its maintenance. The continued use of the personal property in connection with the farm, was a necessary part of the plan. The testator had already provided an outfit for one daughter, and had made no charge against her on that account. The natural inference is that testator did not intend the provision for outfit as a mode of distribution, but simply as an incident of the family relation.

Again: It was argued that, conceding the language used in this gift would be sufficient in ordinary cases to carry only a life interest, the personal property which is the subject of the gift is such as is consumable by use, and the gift is therefore absolute. The general rule here suggested is conceded, but its application is denied. "Farming stock and implements of husbandry are not things quæ ipso usu consumuntur within the rule." The tenant for life is bound to keep them up to the condition and number in which he received them: Wms. Ex., 1196, etc.; Flowers v. Franklin, supra; and the reason for the exception would seem to be applicable to all personal property intended to be used in connection with land. But the rule is intended to relieve the legatee from the hardship of liability for consumable articles which he in fact consumes. Where, however, he elects to take the value of the articles instead of

in specie, the rule is inapplicable. "Money is not of that perishable nature which is necessarily consumed in the using of it:" Wms. Ex., supra.

2. There is an established rule of practice in this state that the absolute confirmation of an executor's account is conclusive of what it contains within the scope of administration: Jones' App., 99 Pa. 124. If this rule be applied to the first account filed by Thomas H. Drennan as executor, the "personal property" bequeathed for the life of Mrs. Drennan must be treated as having been converted by him into cash. It is so credited. It is true that the legatees for life would have had a right to receive this personal property in due course had they claimed it in specie. Upon exception to the account they could have had the cash credits stricken out, but the confirmation of the account is conclusive evidence not only of conversion, but of waiver of the right to claim it in specie.

3. But although the confirmation of this account was conclusive of items of distribution, such items are not even of themselves evidence of payment: Commonwealth v. Snyder, 62 Pa. 153.

The case is therefore untrammeled by any adjudication in the question of distribution. The accountant having admitted that in fact no cash was paid by him corresponding to the credits mentioned, the fund upon the theory of the conclusiveness of the decree of confirmation of the account is still in his hands, and he is liable in this proceeding.

But assume that in fact he had delivered the "personal property" in specie or paid its value as stated in the account to the legatees, was it done in the mode prescribed by law? The 49th section of the act of February 24, 1834, P. L. 83, provided that "whenever personal property is bequeathed to any person for life or for a term of years, or for any other limited period, or upon condition or contingency, the executor of such will shall not be compelled to pay or deliver the property so bequeathed to the person so entitled until security be given in the Orphans' Court having jurisdiction of his accounts in such sum and form as in the judgment of said court shall sufficiently secure the interest of the person in remainder, whenever the same shall accrue and vest in possession;" and the commissioners who reported it say that it was "intended to

provide for a case which sometimes occurs of a bequest of a chattel or fund to a legatee for the term of his life with remainder to another person, where it is obviously proper that some security should be given by the first legatee for the benefit of those in remainder." It will readily be seen that the language used here is broad enough to cover every case of limited interests in personal property short of absolute ownership, and every kind of personal property. The security required was intended as a substitute for the liability of the executor, and he could obviously relieve himself only in the mode here prescribed. If he delivered the property without exacting this security, his liability to the remainderman was necessarily continued.

It having been admitted here that no security was taken, the liability to account for the personal property bequeathed for the life of Mrs. Drennan follows. There is no hardship in this result because in fact this property is in possession or control of accountant. In claiming compensation for twenty-five years as trustee, the accountant has in truth admitted his liability.

For these reasons the exceptions must be sustained.

In accordance with the foregoing opinion the court revised and re-stated the account, charging the amount of the personal estate, with interest from April 1, 1885, crediting counsel fees, costs and a commission of 5 per cent., finding a balance for distribution of $1,481.56, divisible into five shares. Exceptions to this decree were filed and overruled, whereupon the accountant took this appeal, assigning the said opinion and decree as error:

*Mr. John S. Ferguson* (with him *Mr. W. S. Patterson*), for the appellant:

The bequest of the personal property on the farm was a bequest of that property, not for the life of Mrs. Drennan, but absolutely to Mrs. Drennan and her son.

1. By his will the testator declared his intention to dispose of all his estate. He made no bequest over of the personal property on the farm. He referred to it in no way in disposing of the remainder on the farm. Besides, the presumption

of the law is, that he did not intend to die intestate as to any part of his estate.

2. There was no gift over of the personal property after the use for life. And there can be no limitation over of things the proper use of which lies in their consumption. Under a specific gift for life or other limited interest, the first taker gets the property absolutely: German v. German, 27 Pa. 116; Holman's App., 24 Pa. 174; 1 Jarman, 881 n.

*Mr. James M. Nevin* and *Mr. J. McF. Carpenter*, for the appellees:

1. The liability of the accountant as trustee was fixed by the decree at No. 245 September Term 1885, and had he wished to raise the question in this court he should have appealed from that decree. In his account filed after that decree he further admits his liability by charging $250 for services as executor for twenty-five years.

2. We claim, however, that the bequest of the personalty on the farm was for the life of Margaret Drennan only. The estate in the personalty and the estate in the realty were created by the same words, the two being blended; the estate in the realty was but an estate for life: Morrison v. Semple, 6 Binn. 98; Johnson v. Johnson, 1 Munf. 549; 1 Schouler Pers. Prop., 180. General words expressive of an intent to dispose of the testator's whole estate, will not of themselves pass an estate clearly omitted: Rupp v. Eberly, 79 Pa. 141. The presumption against intestacy is fully met by the doctrine that an heir can be disinherited only by express devise or necessary implication: Rupp v. Eberly, supra; Cowles v. Cowles, 53 Pa. 175; Lipman's App, 30 Pa. 180. Where the meaning of a will is doubtful, the rule of equality among children will be taken as a guide to interpretation: Malone v. Dobbins, 23 Pa. 296; Weber's App., 17 Pa. 479.

3. Farming stock and implements of husbandry are not things quæ ipso usu consumuntur; the life tenant is bound to keep them up to the condition and manner in which he received them: 1 Wms. Ex., 176; Flowers v. Franklin, 5 W. 265; Groves v. Wright, 2 Kay and Johns. 347; Phillips v. Beal, 32 Beav. 25; Cockayne v. Harrison, L. R. 13 Eq. C. 432; 1 Schouler Pers. Prop., 168; 2 Kent Com., 353; Harry v. Glover, 2 Hill Ch. 521.

OPINION, MR. JUSTICE PAXSON:

That portion of the will of William M. Drennan which gives rise to the present controversy is as follows:

" I will and bequeath all my real estate and personal property thereon to my beloved wife, Margaret, and my son, Thomas Henry, during my wife's natural life, by their complying with the following bequests, viz.: That they agree to give to each of my daughters, Isabella Jane, Esther Mary, and Emily D., now at home, an outfit equal to my daughter Martha Powers, supposed to be worth about three hundred dollars, at such times as they may wish to leave home, with the express understanding that they may remain at home as now, so long as they may desire. At the decease of my wife, I will the southeast side of my farm. . . . . with all the buildings thereon, to my son Thomas Henry. I give and bequeath also, after my wife's decease, the west side of my farm. . . . . to my daughters."

The personal property referred to consisted of the furniture in the testator's house, and the stock, farming implements, and produce of his farm. This personal property was included in the inventory and appraised at $1,475.55.

Thomas H. Drennan, who was executor of the will, filed an account in 1858, in which he charged himself with the amount of the inventory, including the personal property above mentioned, and claimed credit, inter alia, as follows: " Margaret Drennan, as directed in will, $865.31. Accountant retains to himself, $865.31." This balanced the account. It is admitted that these credits represent the personal property on the farm. The accountant took Mrs. Drennan's receipt for the amount credited to her as above, but in fact never paid the same to her in cash, nor delivered the personal property in specie. He took into his exclusive possession and control the farming implements and stock, and retained the same until his mother's death in 1882. The household furniture was used in common by the accountant, his mother, and sisters, until it was, excepting a few articles, worn out. Of the three daughters mentioned in the will as being at home, one married, received her outfit, and left the fall after her father's death, and another in 1862; and the third remains unmarried in the old homestead.

In 1885, three of the sisters of the accountant presented

their petition to the Orphans' Court, praying for a citation upon the accountant to show cause why he should not file an account of the personal estate of said decedent, and make distribution thereof, etc. The personal estate referred to was the personal property on the farm.

The Orphans' Court ordered an account as prayed for, and in obedience thereto the accountant filed an account, in which he charged himself with the appraised value of said personal property, and claimed credit for divers matters, including stock, furniture, and farming implements, etc., consumed by the family and worn out in their use, and showing a balance in his favor of $675.33. Upon exceptions to his account the court disallowed all the credits excepting three items, aggregating $139.47, consisting of counsel fees, commissions, and costs of filing the account, leaving a balance for distribution of $1,490.06. The effect of this was to compel the accountant to pay for the articles consumed and worn out by his mother and family, a portion of whom were these appellees, during the quarter of a century between the death of the testator and of his widow. This result was reached by holding, (1) that there was an intestacy as to the personal property on the farm, and (2) that the confirmation of the first account of the executor was conclusive of his conversion of said personal property.

In the view we take of the case, an extended discussion of the second proposition is unnecessary. The accountant doubtless thought that the personal property on the farm was given to his mother and himself absolutely. If we concede he was mistaken in this, the mistake was an honest one. There was no evidence or even allegation of fraud. It would be a harsh rule to hold him after all these years, and under the circumstances of this case, to pay for all this consumed or worn out property at the value it was appraised at thirty years ago. There is nothing which requires an Orphans' Court to make an unjust decree. No court is less bound by rigid rules. It has full power to do equity in all cases. Our own duty in this respect is declared by the 4th section of the act of April 14, 1835, P. L. 276, as follows: "The Supreme Court of this commonwealth shall, in all cases of appeal from the definitive sentence or decree of the Orphans' Court, hear and determine the same, as to right and justice may belong," etc.

But there is a more serious difficulty in the way of the appellees. A careful examination of the entire will of Wm. M. Drennan has led us to the conclusion that the testator intended the accountant and his mother to take the personal property on the farm absolutely. It is the general rule in this state that the gift of personal property for life, without any limitation over, and without the intervention of a trustee, is an absolute gift: Merkel's Appeal, 109 Pa. 235. It is true the testator blends the real and personal estate in making the gift, and the real estate being given only for life, it creates a presumption that he intended giving a life estate only in the personalty: Morrison v. Semple, 6 Binn. 98. It is, however, but a presumption, and not conclusive of the testator's intent. We think a contrary intent can be gathered from the will.

We cannot presume that he intended to die intestate. After providing for the payment of his debts, he proceeds to dispose of " the residue " of his estate. The farm, after his wife's death, is divided between the accountant and his sisters. All his money at interest is given to his daughters. This in terms disposes of all his estate, except the personal property on the farm. What did he intend to do with this?

The answer to this question is not difficult. It appears to us that he intended to provide a home for his widow, his sister Isabella, and his three unmarried daughters during the lifetime of his wife. In addition, he desired each of the three daughters remaining at home to have an outfit equal to that of Martha Powers, his married daughter, which he states was about three hundred dollars. To secure these objects he inserted in his will the clause referred to. This secured the farm as a home for the family during his wife's life. The gift of the stock and farming implements, with the household goods, secured their comfort in the home and the means by which the farm could be made productive and the family supported. It is possible that the blending of the personal with the real estate may have been an oversight. That he could have intended to limit the use of the personal estate to the life of his wife is improbable. Some of it was consumable in its nature, and as to such property there is no responsibility to remaindermen. There can be no such thing as a life estate in a bag of flour or a barrel of pork. It is hardly likely he

contemplated having his son surcharged with this property after much of it was consumed or worn out. Moreover, a mere estate for the life of the widow in the personal property might have seriously interfered with a part of the testator's scheme. The devise referred to was upon the condition that the appellant was to give each of his three sisters an outfit amounting in the aggregate to about $900. Out of what fund was this charge to be paid? The personal property was the primary fund. The money at interest had all been given to the daughters. There was nothing left but the personal property on the farm. If the widow had died within one year of the testator, the appellant would have had no fund in his hands out of which he could have furnished an outfit for his sisters; yet by the acceptance of the devise he would have been liable. We are very sure the testator never intended to lay this burden as a personal charge upon his son. On the contrary, he provided the means of payment by giving this personal property to his wife and son. We have no doubt he intended them to have it absolutely.

It was error, therefore, to require the accountant to file a further account. He had nothing in his hands for distribution. The costs of that proceeding, as well as of this appeal, should be paid by the appellees.

> Decree reversed, and all proceedings subsequent to the confirmation of the first account are set aside at the costs of the appellees.