Opinion by
Henderson, J.,
The testator gave his estate to a trustee, the income therefrom to be paid to his four sons and two daughters, in equal shares for life, with the further direction, “from and after the death of either of my sons or daughters and until the death of all of them, to pay the income which he or she would, if living, have received to such person or persons of kin to such son or daughter as he or she may by will have appointed and in default of such appointment to the child or children of such son or daughter that may then be living, or the issue of any child or children of such son or daughter that may then be dead, leaving issue, in equal shares equally, as however that such issue shall take per stirpes only a parent’s share, and if there be no children or issue of such son or daughter then such person or persons as would take from, through or under me had I lived until then and died intestate.
“In trust when and so soon as the longest, liver of them, my sons and daughters, shall be dead, to make partition, allotment and division of my entire estate, real and personal *188 to and amongst the persons receiving or entitled to the income thereof immediately prior to such death, by virtue of the previous clauses of this my will,” etc. One of the testator’s sons, Charles D. Freeman, died testate, leaving to survive him a widow, Augusta Freeman, and four children. The fourth clause of the will of the said Charles D. Freeman is in these words: “I give and devise and bequeath all my real and personal estate also that interest in my father’s estate over which I have power of appointment to my wife to take and use same and the net income thereof during all the term of her natural life without giving security as life tenant thereof.” The wife of Charles D. Freeman died about six years after his death. Henry B. Freeman, one of the children of Charles D. Freeman, died about ten years after his father, having devised and bequeathed all of his estate to his wife, Anna Dimond Freeman, who now claims the share of the income of the trust estate to which her husband would be entitled if living— that is, one-fourth of one-sixth of the income as long as the last survivor of the children of Henry G. Freeman lives. The surviving children of Charles D. Freeman deny the right of the widow of their brother, Henry B. Freeman, to participate in the distribution of the estate, and contend that Henry B. Freeman did not fall within the description “ child or children then living,” and, hence, was not within the class who could take under the will of Henry G. Freeman; that if, under the will of Henry G. Freeman and the appointment by Charles D. Freeman in his will, Henry B. Freeman took a remainder, such remainder was contingent on the death of Augusta Freeman, widow of Charles D., during the life of the last surviving child of Henry G. Freeman, until which time the remainder could not vest, and that as Henry B. Freeman had been dead for several years, no estate in the income ever vested in him and he had no interest in the estate to bequeath to the petitioner; that the appointment by Charles D. Freeman, in the fourth clause of his will, was valid as to the personal estate, and gave an absolute property therein to his widow, Augusta Freeman, and, therefore, the widow of Henry B. Freeman had no interest in the income therefrom. Two material ques *189 tions arise: (1) Did a remainder in the income of Henry G. Freeman’s estate vest in his grandchildren under his will? (2) Did the power of appointment, exercised by Charles D. Freeman, vest in his widow, Augusta, an absolute estate in that part of the income derived from personalty? The intention of Henry G. Freeman is not obscurely expressed in his will. His object was to create a trust as to the income of his estate as long as any one of his children survived, and to limit the control of the share of any one of the children to an appointment by will in favor of a legatee who was “of kin” to such child. There was a recognition of the fact that the income would continue to accrue until the death of the last survivor of the children; hence, the provision of the will granting a power of appointment to each of the children as to the income accruing under the trust after the death of such child, and as there might be an omission on the part of any one of the children to appoint under this power, provision was made for the grandchildren or issue of such grandchildren. It is a familiar doctrine that the law favors vested rather than contingent estates, and this is specially so where the application of a contrary rule would work an intestacy. The rule applies also to remainders: “A remainder is always to be considered vested rather than contingent if the words of the will creating it are capable of such construction:” Chew’s Appeal, 37 Pa. 23; Siddall’s Estate, 180 Pa. 127. The interest vests immediately and the enjoyment only is postponed. In the absence of an expressed contrary intention a legacy bequeathed in default of appointment, vests in the legatee on the death'of the testator, subject to be divested by the exercise of the power of appointment: 4 Kent’s Com., 324; Fearne on Remainders, 226; Perry on Trusts, sec. 250; Cunningham v. Moody, 1 Vesey, 174. This is so because the power of appointment does not create an estate, nor hold it in abeyance. Its effect is to divest an estate which, but for the exercise of the power, would remain in the devisee or legatee. The will under consideration does not disclose afi intention inconsistent with this principle. In the event of the death of any one of the children, his share was to go to the child or children of such deceased son or *190 daughter, or to the issue of any child or children of such son or daughter, subject only to the exercise of the power of appointment. If there be no appointment the whole interest passes to the grandchild or his issue. The full exercise of the power would divest the estate, but it could be defeated in no other way. Charles D. Freeman exercised the power of appointment, in part, by bequeathing the interest in his father’s estate to his wife, to use the same and the income thereof during her natural life. This did not dispose of the whole estate. The bequest gave to the widow as much of the income as became payable during her life, and the remainder thereof passed to the children of Charles D. Freeman, under the will of Henry G. Freeman. As much of the estate bequeathed to the grandchildren under the latter will as was not disposed of by Charles D. Freeman under the power, remained vested in his children, and is distributable according to the provisions of the will of Flenry G. Freeman. Charles D. Freeman’s bequest to his widow was in express terms for her natural life as life tenant, and disposed of the net income payable under his father’s will. These are plain words and leave no doubt as to the character of the estate given to his widow. Other provisions in his will furnish sidelights in confirmation of this view.
It is contended, however, that the decree cannot be sustained because a gift of personal property for fife will vest in the legatee an absolute interest in the subject of the bequest when no trust is interposed or there is no bequest over, and this is said to be a rule of law and applicable here because the income bequeathed by Henry G. Freeman arises in part from personal estate. Because of this fact it is claimed that the appointment to the widow of Charles D. Freeman gave her an absolute estate in so much of the income as was derived from personal property. It cannot properly be said to be a rule of law that a bequest of personalty for life gives to the first taker an absolute title to the property even where there is an express power to consume, sell and dispose of the subject of the bequest. The general rule that an absolute title is granted is not a rule of law but one of construction to aid in ascertaining *191 the intention of the testator. Where a different intention is apparent the rule does not apply: Tyson’s Estate, 191 Pa. 218; Zimmerman’s Estate, 23 Pa. Superior Ct. 130; and where the gift for life blends real and personal estate, the presumption is that the testator intended to give a life estate only in the personalty: Drennan’s Appeal, 118 Pa. 176. This is not a conclusive presumption, to be sure, and it may be overcome by other provisions of the will, but there is nothing in the will of Henry G. Freeman which excepts it from the application of this presumption. The cases relied on by the appellant are .of a class in which there appeared, from the terms of the will, an intention that the corpus of the estate should go to the legatee. A gift of property for life which would necessarily be consumed or worn out in its use or as to which there was an unrestricted power of disposal as the legatee saw fit, or to use as the legatee might deem best for his own advantage, carries with it an absolute title because the language of the testator implies that that was what he intended to give. Having regard to the expressed intention of the testator we think it clear that Augusta Freeman took a life estate only under the will of Charles D. Freeman, and that as to the remainder not disposed of by the power of appointment, the title is in the children of Charles D. Freeman and the legatee of Henry B. Freeman. It follows that the widow of Henry B. Freeman is entitled to one-fourth of one-sixth of the income arising under the will of Henry G. Freeman.
The decree is affirmed.