## McKenna Estate

354

*John E. Costello*, for accountants.

*Howard F. Carson*, for petitioners.

ANDERSON, P. J., June 1, 1955.—This estate is before the court on a petition praying for a declaratory judgment to be entered determining who is or are the present owner or owners of the real estate of which decedent died seized.

All parties in interest have joined in the petition, and pertinent facts have been agreed upon by written stipulation filed of record.

From such agreed facts it appears that decedent died testate in 1933 and that his will was duly probated on June 7, 1933. The intestate heirs of decedent were his widow and two children, who are also the sole beneficiaries of his estate named in his will.

The portion of decedent's will which deals with his real estate reads:

"That my Real Estate, wherever the same may be located, that I may own at time of my death, be sold at the best price obtainable, either at private or public sale, by my executor, and the proceeds therefrom, after all indebtedness and bequest to my Niece Velma E. Himebaugh has been paid, divided equally share and share alike between my wife, Sara L. McKenna. My Son, Warren Nelson McKenna, and Bertha Mabel Link, my daughter, if they are then all living: But if either of them shall have died, then the division shall be made equal between those yet living.

"Provided However: that before the sale of my Real

Estate shall have been made, I direct that after all taxes, fire insurance and other debts have been paid, by my Executor, then the remainder of all rents of said property, as collected by my Executor, shall be paid to my said wife, Sara L. McKenna, to be used by her for her maintenance, pending said sale. He, my Executor to have authority together with any recommendations from my said Wife, to rent all buildings, receive the rent therefrom and pay all taxes and Fire Insurance on the same.

"My Wife, Sara L. McKenna, to have the privilege of living in any rooms, or parts of the building, that she may choose, while said building remains unsold, if she so desires, free of rent."

The real estate was never sold. The widow lived in a portion of it until her death and received the net rentals. Decedent's daughter, Bertha Mabel Link, died intestate January 2, 1948, leaving to survive her as her only heir a son, Joseph Link, a party to these proceedings.

Decedent's son, Warren Nelson McKenna, died testate May 29, 1953, naming his widow, also a party to these proceedings, as the sole beneficiary of his estate.

The widow, Sara L. McKenna, died testate December 10, 1954, and designated Thomas E. Gregg, a party to these proceedings, as her sole beneficiary.

The heir and beneficiary respectively of the deceased daughter and son, claim to own together a two thirds undivided interest in decedent's real estate and that the other one third undivided interest in such real estate is vested in Thomas E. Gregg, the beneficiary of decedent's widow's will.

Thomas E. Gregg, the widow's beneficiary, claims the entire estate on the basis of her survivorship of the other beneficiaries and her devise to him, or, in the alternative, in any event, to own a one half undivided

interest in such real estate because in the original will there is a period after the name of the widow, rather than a comma, allegedly indicating, because of the use of the word "between" (properly interpreted to mean as concerning only two interests), in connection with the words "to divide" or, in other words, that the real estate was to be divided between the widow and the two children each taking a one-half interest if survivorship provision is not applicable.

As to such suggestion, if the word "and" had been placed between her name and the words "my son" and the property had been promptly sold, there might have been some merit to such position.

But considering the direction to divide equally share and share alike preceding the names of the beneficiaries, the reasonable interpretation would seem to be that the word "between" is untechnically used for the word "among" which word is properly used when referring to more than two interests.

A much more intriguing problem is created, however, by the provision: "if they are then all living: But if *either of them* shall have died, then the division shall be made equally *between those yet living.*" (Italics supplied.)

The records in the office of the register of wills, and the admitted facts, both show that the executor named by decedent renounced his right to act and that letters of administration c. t. a. were issued jointly to the widow, daughter and son of decedent. The stipulated facts disclose that following issue of the letters on decedent's estate on June 7, 1933, a bank account was opened by the administrators c. t. a. in the First National Bank of Roscoe (now McKeesport) in the name of decedent's estate and that the signature card filed with such account indicated that withdrawals could be signed by the three administrators. Whether jointly or by any one of them is not disclosed. In this account

all the rents of decedent's real estate were deposited and the moneys were used by the administrators up until 1946 to pay the principal and interest on a mortgage in the principal sum of $1,050 which was a lien on decedent's real estate at the time of his death, taxes, insurance and other maintenance expenses, and that until the death of the widow such account was still so maintained and used, that the mortgage was paid off on October 26, 1945, and that since then the funds deposited in such account were, at intervals, withdrawn and deposited to the account of Sara L. McKenna. Such stipulated facts also disclose that decedent's real estate is presently assessed under the title, "William I. McKenna Estate, c/o Nelson McKenna, 405 Lincoln Avenue, Charleroi, Pennsylvania," presumably the son of decedent.

Counsel for Thomas E. Gregg contends that he is the sole owner of the real estate involved by virtue of the fact that his testatrix was the survivor of the three beneficiaries named by decedent, and that the administrators apparently had deliberately refrained from selling such real estate as directed by the will and each had gambled on being the sole survivor and that the widow was the winner of such gamble. In decedent's will, if the words "then living" referred to the time when the fund realized from the real estate would be divided, it follows that he apparently anticipated that there should be at least two survivors to take. The words used as pointed out being: "But if either of them shall have died, then the division shall be made equally *between those yet living.*" (Italics supplied.) And if the words recited meant surviving at the time of the division of the proceeds it is also apparent the testator never contemplated or provided for the situation that has here developed. He, at most, by his words, anticipated that the sale of his real estate might be delayed some reasonable length of time after his death,

and that possibly one of his beneficiaries might have died in the interim and so directed that then the two survivors, subject to the payment of debts and legacy to the niece (which by the stipulated facts was paid although at what time is not disclosed) should take the balance. The real estate was never sold and the contingency on which one beneficiary by such interpretation might be divested of his or her interest never occurred.

Where the children of a decedent are his beneficiaries the law favors a holding of their interests to be vested, if possible so to do, without violation of testator's will: Laughlin's Estate, 336 Pa. 529, 534. " ' "The presumption that a legacy is intended to be vested, applies with far greater force where a testator is making provision for his children than where the gift is to strangers or collateral relatives" ' ".

A condition subsequent is to be construed with great strictness, since the effect is to divest estates already vested. The very event must happen, or the act with all its details must be done, in order to deprive the legatee of his legacy: Macalester's Estate, 3 Dist. R. 103; Hunter on Orphans' Court, vol. 2, page 1345.

In the case cited the testator directed that his real estate be sold and from the proceeds a $10,000 trust estate be set up for his daughter Elizabeth and her child, they to receive income therefrom during the life of Elizabeth and at her death the principal of the trust to go to her child, payable when she became of age. In case of death of *both* fund was to go into his residue which was given to nine of his other children. Elizabeth's child died before its mother but after death of the testator.

The court, the esteemed Judge Penrose, said:

"There can be no doubt that the interest of both Mrs. Lathrop and her child vested at the death of the

testator, subject, perhaps, to a possibility of being divested. . . . But the vested interests, under the terms of the will, were not to be divested simply by the death of one of the beneficiaries. . . . The condition being subsequent the language is to be construed with great strictness, since the effect is to divest estates already vested." And he then gave this illustration. "Thus, 'if legacies be given to two persons, and if either should die during the life of A., then to the survivor living at the death of A.; and both legatees die before A., the personal representatives of both will be entitled; for the legatees took vested interests at the death of the testator, subject to be divested in favor of the survivor who might be living at the decease of A.'; But as there was no such survivor at that period, the divesting contingency never happened." See also Chew's Appeal, 37 Pa. 23, 29.

In Wengerd's Estate, 143 Pa. 615 (1891) testator provided:

" 'I direct my executors hereafter named to sell at public or private sale my house and lot . . . and . . . to make, execute, . . . deed or deeds . . . thereof'." He then provided that the proceeds from such real estate, together with his personal estate be divided among his three children and children of a deceased son—and in case of death of any grandchild before payments to them of their shares, it was to be divided among survivors. One grandson who had been paid $200 by the estate died before receiving payment of the remainder of his share. His widow claimed his entire share as part of his estate. In disposing of such issue the court says, page 621:

"In considering the nice question whether a legacy is vested or contingent, regard must always be had to the position of the parties. In construing a will, where the bequest is ambiguous, the inclinations of the courts are always towards vesting the legacy: Coggins'

App., 124 Pa. 10. The presumption that a legacy was intended to be vested, applies with far greater force, where testator is making provision for a child or a grandchild. . . . It would be straining a point to hold that this testator intended that his grandchild should be deprived of his share, though he should die leaving a child or children, by the mere accident of his death before the day before the money was distributed. This would enable an executor, under some circumstances, absolutely to defeat the will of his testator, by withholding or refusing distribution for a certain period. We cannot assume that this testator intended to lodge such a power in the hands of the executor of his will."

In such case the executors delayed more than two years to take any action and then only took action when they were cited to file an accounting.

In the instant case all of the beneficiaries were living until 1948 or for a period of 15 years following the probate of decedent's will.

In contrast to such holding is the decision in Wraught's Estate, 347 Pa. 165. In this case the testator gave his estate to his wife but provided that should she die before the estate was settled it was to go to another named beneficiary. The wife, who was the executrix, died within four months of the first publication of the notice of issue of letters to her and before an accounting could be filed. The estate was awarded to the other persons named. The court distinguished this case from Wengerd's Estate because in the former there was an unnecessary delay on part of the executor.

Also, in McClure's Estate, 221 Pa. 556, where the condition was that if the beneficiary failed to be alive when the proceeds were payable that he, having died before such time, would not be entitled to take the estate, the court held that in such case time was of the essence of the gift.

In Groninger's Estate, 268 Pa. 184, the court stated as to application of contingencies: . . . "in all cases it is whether the testator intended it [as] a condition precedent that the legatee should survive the time appointed by him for the payment of their legacies; the answer to this question must be sought for out of the whole will, and not in the particular expression only in which the gift is made".

In instant case, assuming, but not deciding, that the testator primarily intended his two children and widow should be the equal beneficiaries of his estate, but realizing that possibly such real estate might not be promptly sold, and anticipating that at least one of them might die before the property was sold and the proceeds ready to divide, attached a condition that should "either" die before the proceeds were ready to be divided, that the division should be made between those living. But it certainly cannot be reasonably contended that he anticipated a delay of 15 years by his executor in proceeding to make sale of his real estate nor that his executor was intended to be vested with the privilege and the power of postponing his direction to sell long enough beyond such reasonable time as might be required to effect the sale, so as to result in one or more of them being deprived of his benefits, and in this case, of his depriving his own children of a share in his estate.

It must not be overlooked that the three named beneficiaries were themselves the administrators c. t. a. and that from the date of the death of the testator until the death of the last survivor they carried the property as the estate of their testator and deposited all income therefrom in an estate account. Such conduct on their part, and of the survivors of them, is evidence pointing to the fact that they had constantly considered the property as an asset of the testator's estate and not as belonging to one or more of them individually.

The will here involved definitely directs that decedent's real estate be sold and, in fact, it is only the residue remaining after the payment of the bequest, debts and so forth that was to be divided among the named beneficiaries.

Under the Pennsylvania decisions this amounts to an equitable conversion of the real estate and the heirs take as personal property: McClarren's Estate, 238 Pa. 220. And to effect a reconversion there must clearly and unmistakably appear an intention to reconvert. A direct election is not necessary. Any act or acts which disclose plainly an intention to reconvert the real estate directed by the testator to be sold: Brandon v. McKinney, 233 Pa. 481-496.

The possible interpretation of the will that the words "then living" meant living at the time of testator's death, in which event there would be no possible room for argument as to who the present owners are, and although there is real merit in that position, it is not here discussed because, in view of the actual facts, the same conclusion as to identity of present owners must be reached.

It is clear the beneficiaries under decedent's will took a vested interest in the residue of the funds to be derived from the sale of real estate. Assuming and assuming only that the words "then living" meant at the time of the division, the condition by which such interest was to be divested, as has been pointed out, never occurred since the property was never sold. Under the authorities cited such conditions, particularly where children are concerned, must occur to the last detail.

The same legal conclusions could, and should, be reached in any event, on the basis of the decision in Wengerd's Estate, supra. The three named beneficiaries, each as administrator, owed to the other beneficiaries the duty to complete the conversion within

a reasonable time after testator's death and they should not be permitted to divest one interest by delay of over 15 years, and it could be reasonably contended that they intended to, and by their conduct did effect a reconversion.

The court has not, however, discovered any decision where appellate courts have held that a reconversion had occurred where there was not presented some record evidence, such as recorded deed of the sale of a portion of the real estate, the recording of an oil and gas lease or recorded deed of sale of coal interests, and, therefore, avoids any finding as to reconversion here.

From the admitted facts the court finds and so holds that the widow, son and daughter of decedent each took a vested undivided one-third interest in the property here involved at the death of the testator and that the condition as to survivorship was a condition subsequent and that it never occurred, and, therefore, their interests were never divested.

The court also holds that the principle of law laid down in the case of Wengerd's Estate, supra, also governs here and that the failure of the administrators c. t. a. to effect a sale of his real estate within the 15 year period following the date of decedent's death, and the date of the death of his daughter, the first one to die, estops a divesting of any of their interests because of failure to survive the others, and therefore, does this June 1, 1955, adjudicate that decedent's title to the real estate of decedent is now vested as follows: A one third undivided interest in the intestate heir or heirs of Bertha Mabel Link, a one third undivided interest in the intestate heir or heirs, devisee or devisees, as case may be, of Warren Nelson McKenna and a one third undivided interest in the devisee of Sara L. McKenna.