## Oswald, Executor of Yenner, *versus* Kopp.

In the construction of an instrument of writing, the rule is to give effect to all its language.

Where a testator who had no lineal descendants devised as follows: "I give and bequeath to my beloved wife Louisa, so much of my estate, real and personal, as the law allows her under the intestate laws of Pennsylvania, absolutely," and after giving other legacies to his relatives, "It is my will that the rest and residue of my estate, real and personal, that my said wife shall enjoy without condition or security during her natural life." And gives power to his executors, after the death of his wife, to sell his real estate and to be divided as before directed among his brothers and sisters.

It was *Held*, That the widow took a fee simple in one moiety of the real estate, and a life estate in the residue.

The reference to the intestate laws fixes the *quantity* of land devised.  The term " absolutely" determines the nature of the *estate.*

ERROR to the Common Pleas of *York county.*

This was an amicable action of debt by Solomon Oswald, executor of Peter Kopp, deceased, against Simon Kopp and Jacob Kopp.

The parties agreed upon the following case stated in the nature of a special verdict:—

" Peter Yenner, of the borough of York, Pennsylvania, made his last will and testament in writing, bearing date the 2d day of August, 1849, which afterwards, and after his death, was duly proved, and recorded in the register's office of York county, on the

[Oswald v. Kopp.]

14th day of August, 1849, as follows:—'First it is my will and I order and direct that my Executor hereinafter shall pay all my Just debts and funeral expenses—Secondly—It is my will and I order my Executor to have suitable tombstones placed to my grave. Thirdly—I Give and bequeath to my beloved wife Louisa, so much of my Estate real & personal as the law allows her under the Intestate laws of Pennsylvania, absolutely—Fourthly—I Give and bequeath unto Henry Ziegley, son of John, my Watch, all my clothing, and Ten dollars in cash to be delivered and the money paid to him as soon as conveniently can be after my death by my said Executor.—Fifthly—It is my will that the rest and residue of my Estate Real and Personal, that my said wife shall enjoy without condition or security during her natural life, and at her death I give and bequeath the same to my brother Andrew and to my Sisters namely, Margaret, Maria Magdalena, & Christiana Barbara share & share alike, and to their heirs & legal representatives.—And lastly, I hereby nominate, constitute and appoint my beloved friend Solomon Oswalt of the Borough of York, Drugist, to be my sole Executor of this my last will & testament, giving him full power to sell my Real Estate at the death of my said wife Louisa and also to make a deed or deeds to the purchaser or purchasers for my said Real Estate; and personal property is also to be sold by said Executor, and to be divided as I have directed the same to be divided.' The said Peter Yenner had no issue. Louisa Yenner, his wife, survived him, and continued in possession of the real and personal property mentioned in his will, except the articles bequeathed to Henry Ziegley, which he got. And on the 14th day of April, 1850, the said Louisa Yenner, for a valuable consideration, conveyed to Charles Walter all her right, title, and interest in said real and personal estate, to which she was entitled under the said will. In 1856, the said widow, Louisa Yenner, died. The personal estate sold at her death for $29. It was appraised at the death of the testator at $100. On the 23d day of April, 1856, the plaintiff, as executor as aforesaid, sold the real estate of the said Peter Yenner, deceased, consisting of a house and lot of ground in the borough of York, to Simon Kopp, one of the defendants, for the sum of $1000, payable in cash on the delivery of the deed and possession, and the said purchaser, with Jacob Kopp as his surety, subscribed an agreement to pay the said purchase-money, according to the conditions of sale.

"A claim is now made in right of said widow under the said conveyance to Charles Walter, for the undivided half of said premises. After the execution of the said conveyance, the said Charles Walter became indebted, a judgment was entered against him, an execution issued, and his interest in said property was sold at sheriff's sale to Peter Peter, on the 6th day of January, 1854, during the lifetime of said widow, and the said Peter Peter

[Oswald *v.* Kopp.]

now holds the deed executed to him by the said sheriff, and claims the undivided half of said property. The plaintiff demands the purchase-money upon his contract of sale as aforesaid, but the said purchaser, having fears on account of the title, declines to accept the deed and pay the money, and thereupon this amicable action was entered. If the said sale by the said plaintiff will pass the whole estate, in said premises, which the said testator had at the time of his death, to the said purchaser, then judgment to be entered for the plaintiff for $1000, execution to stay until the deed be delivered by the plaintiff to the said purchaser. If the said sale will not pass the whole estate as aforesaid, and the said premises in the hands of the said purchaser would be subject to any claim in right of said widow, then judgment to be entered for the defendant. If the judgment be in favour of said plaintiff, the court is respectfully requested by the plaintiff to say, whether or not the money in his hands would be subject to any claim under said conveyance to Charles Walter."

The court below rendered a judgment on the case stated in favour of the defendants.

The plaintiff took this writ, and assigned for error that the judgment should have been in favour of the plaintiff.

*Gibson,* for plaintiff in error.

*Evans* and *Mayer,* for defendant in error.

The opinion of the court was delivered by

Lewis, C. J.—In the construction of an instrument of writing, the rule is to give effect to all its language. The testator gives to his wife Louisa " so much of my real and personal estate as the law allows her under the intestate laws of Pennsylvania, *absolutely.*" After a small legacy to Henry Zeigley, the testator then gives the *residue* of his estate to his wife for life, remainder to a brother and sisters, share and share alike. He died without issue. If the word " absolutely" had been omitted from the devise, the widow would have taken a life estate only in the quantity allowed by the intestate laws. But the insertion of that word in the will shows that the testator intended to give her a fee simple. To hold that she took merely a life estate is to give no effect whatever to a word of known signification. There are other reasons in support of this construction, but it is not necessary to state them, as the case is a clear one. The power given to the executors to sell at the death of the wife, and to divide the proceeds, " as I have directed the same to be divided" manifestly relates to that part of the estate which was to be divided, " share and share alike," among his brother and sisters. It has no relation to the moiety given in fee simple to the widow, about which

there was no direction for a division. The reference to the intestate laws fixes the *quantity* of land devised—the term "absolutely" determines the nature of the *estate.* As the widow takes a fee simple in one-half the testator's real estate, the judgment for the defendant, on the case stated, must be affirmed.

Judgment affirmed.