## Hope *versus* Rusha et al.

88    127
40SC    81

W. by his will dated prior to 1833, gave and bequeathed, inter alia, " to my son Aaron, the plantation whereon I now live, absolutely * * * subject to the maintenance of my wife and my son Aquilla during their natural lives * * * my son Aaron having the entire use and control of the said plantation, as well during the life of my wife as afterwards * * * and if either of my sons James, Aaron or Joseph, should die without lawful issue, then the portion of the deceased one to be equally divided between the survivors of them." *Held*, that Aaron took an estate tail with contingent remainder in fee to his brothers if they should survive him.

November 15th 1878. Before SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. AGNEW, C. J., and WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1878, No. 240.

Ejectment by Martha A. Hope against Nicholas Rusha and others to recover the one undivided sixth part of a tract of land in Allegheny county, containing 180 acres. Plaintiff claimed title to this land as one of the heirs at law of Aaron Whitaker, the younger, deceased. James Whitaker died seised in fee of a large tract of land, situated in Mifflin township, and devised the tract of land, embraced in the present action of ejectment in fee to his son Aaron Whitaker the elder, grandfather of the plaintiff in error. Aaron Whitaker the elder died seised in fee of the same in the year 1833 or thereabouts, having first made his last will and testament, wherein he divided his real estate, including said plantation, between his three sons, James, Aaron and Joseph W. The parts of said will devising said lands are as follows, viz. :

" First. I give and bequeath unto my son James Whitaker, the plantation whereon he lives, purchased by me from Francis Hays, and further, I discharge him from all debts which may be due from him to me, whether by notes, bonds or otherwise.

" Secondly. I give and bequeath unto my son Aaron the plantation whereon I now live, *absolutely*, and further, I give unto my said son Aaron any two horses which he may choose from those in my possession at the time of my decease, together with my wagons and other farming utensils, *absolutely*, and the balance of all my cattle and stock, during the natural life of my wife Martha, shall be at her disposal—the last said plantation nevertheless to be subject to the maintenance and support of my son Aquilla Thompson Whitaker during his natural life.

" Thirdly. I give and bequeath unto my son Joseph W. Whitaker my house and lots in the town of Birmingham, together with my stock in the Bank of Pittsburgh, and also a horse, saddle and bridle, the value of which shall not exceed $90, together with one good bed, bedding and bedstead.

[Hope *v.* Rusha.]

"Fourthly. * * * and further, it is my will that my said wife Martha, so long as she shall remain my widow, shall have her living and decent support where I now live, and from off the plantation and personal property now in my possession, or which may be in my possession at the time of my decease; my son Aaron having the entire use and control of the said plantation as well during the life of my said wife as afterwards. It is my further will in regard to him that he shall have one good feather bed, bedding and bedstead, and further, if he should marry, or if my said wife should choose to live separate from his family, then she shall have the entire use of the kitchen and other rooms adjoining, both above and below, west of the entry, with the use of the said entry, during her natural life; and lastly, if either of my said sons, James, Aaron or Joseph, should die without lawful issue, then the portion of the deceased one to be equally divided between the survivors of them."

The said Aaron Whitaker, the younger, to whom was devised by said will the home plantation, became possessed thereof under said will and died seised thereof, in 1847, intestate, leaving issue six children, of whom the plaintiff is one, and as one of his heirs at law, she claims title to the one-sixth of said home plantation. Defendants claimed that Aaron Whitaker, the younger, took an entailed estate in said home plantation, which passed on his death to his eldest son, Christopher D. Whitaker.

These facts, together with said will being proven and given in evidence with proof of the service of the writ on defendants, the plaintiffs rested their case, and the defendants moved for judgment of compulsory nonsuit, "for that the evidence does not show either title or right of possession in the plaintiff to the premises or any part thereof described in the writ." Whereupon the court, on June 3d 1878, entered a judgment of compulsory nonsuit, and upon the same day the plaintiff filed a motion to have said nonsuit taken off, alleging that the court erred in entering the nonsuit as a matter of law. This motion, on July 13th 1878, was argued, and on July 27th 1878 the motion to take off the nonsuit was overruled and an opinion filed by the court, Ewing, P. J., as follows:

"If Aaron Whitaker, the second, under the will of his father, took a fee simple in the land in dispute, subject to be divested on the contingency of his dying without issue living at the time of his death, the plaintiff is entitled to recover, otherwise she has no title to the land in dispute.

"Assuming that the first clause of this will devising the land would (standing alone) vest in Aaron Whitaker the second a fee simple absolute, what is the effect of the limitation over?

"'If either of my sons, James, Aaron or Joseph, *should die without lawful issue*, then the portion of the deceased one to be equally divided between the survivors of them.'

"'Should die without lawful issue.' Is it a definite or indefinite failure of issue that is intended?

[Hope v. Rusha.]

" That such words standing alone are to be construed as intending an indefinite failure of issue, is too well settled law in Pennsylvania to require the citation of authorities in support of this rule of construction.

" We are unable to discover anything in the nature of the devise over or in any subsequent expression of the will, or in the numerous authorities cited by the plaintiff's counsel to modify in this case the authorized interpretation of the words, 'should die without lawful issue.' The phrase must be construed to mean an indefinite failure of issue.

" It follows therefore [that Aaron Whitaker the second took an estate tail, which descended to his eldest son, Aaron Whitaker the third, and that the plaintiff has no title to the land."]

The court in banc subsequently refused to take off this nonsuit; when plaintiff took this writ, alleging that the court erred in this action and in deciding as above in brackets.

*R. & S. Woods, Emmett F. Cotton* and *R. S. Crawford,* for plaintiff in error, cited: Richardson v. Noyes, 2 Mass. 56; Burke v. Annis, 11 Hare 230; Bradford v. Perkins, 23 Pick. 183; Packard v. Packard, 16 Id. 191; Annable v. Patch, 3 Id. 360; Anderson v. Jackson, 16 Johns. 382; Fosdick et al. v. Cornell, 1 Id. 440; Hall v. Chaffee, 14 N. H. 216; Bell v. Scammon, 15 Id. 381; Barnfield et al. v. Wetton, 2 Bos. & Pull. 324; Jessup v. Smuck, 4 Harris 327; Sheets's Estate, 2 P. F. Smith 257; Eby v. Eby, 5 Barr 461; McCullough v. Fenton, 15 P. F. Smith 418; Rupp v. Eberly, 29 Id. 141; Middleswarth's Admr. v. Blackmore et al., 24 Id. 414; Grenawalt's Appeal, 1 Wright 95, 482; Greenawalt v. Greenawalt, 21 P. F. Smith 483; Taylor v. Taylor, 13 Id. 483; Price v. Taylor, 4 Casey 95; Edwards v. Barnard, 3 Norris 186; Ferguson's Appeal, 6 P. F. Smith 487; Swisshelm's Appeal, 6 Id. 475; Gulliver v. Wickett, 1 Wilson 105; Massey v. Hudson, 2 Merivale 180; Pinbury v. Elkin, 1 P. Wms. 563; Walter v. Drew, 1 Com. R. 372; Pells v. Brown, Cro. Jac. 590.

*George P. Hamilton,* for defendant in error.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 6th 1879.

There is but one question presented for consideration on this record. Whether Aaron Whitaker the younger, the ancestor of the plaintiff, took under the will of his father Aaron Whitaker the elder, an estate in fee-simple subject to an executory devise to his brothers if they should survive him in case he should die without issue living at the time of his death, or whether he took an estate tail with a contingent remainder to his surviving brothers. The

7 NORRIS—9

learned court below being of the opinion that the devise over was to take place on an indefinite failure of issue of Aaron Whitaker the younger held that he took an estate tail, and entered a compulsory nonsuit.

That the nature of the devise over is a very important element in determining whether the words "dying without issue" are to be construed in a will as importing a definite or indefinite failure of issue has been settled in many cases: Taylor *v.* Taylor, 13 P. F. Smith 485, and the authorities there cited. If the devise over be for life it necessarily implies that the devisee may outlive the first estate. It is necessary to determine, therefore, whether the limita-' tion over to the survivors in this case gave a fee or a life estate. To ascertain this it will be quite important to consider whether the first limitation was for life or in fee. Both the first and the ulterior limitations are wanting in technical words to carry a fee—and the will is dated prior to the year 1833, when the Act of Assembly, Pamph. L. 249, changed the rule of construction of wills. Still, as to wills executed prior to that act if there is enough to indicate the intention of the testator to give a fee—no technical words are required. We must construe the language of a will as we would a letter or any other communication by the rules which determine the meaning of the ordinary language of the intercourse of people. The testator was not a lawyer and is presumed to have been *inops consilii*. "I give and bequeath to my son Aaron the plantation whereon I now live *absolutely*." This is immediately followed by a bequest to the same person of certain articles of personal property *absolutely*. Now it may be that strictly in legal technology absolute is used to distinguish unconditional from conditional or qualified estates; but that the testator did not use it in this sense is manifest from his subjecting the plantation devised to Aaron to the maintenance and support of his son Aquilla during his natural life. In Loveacre *v.* Blight, Cowp. 352, there was a devise of land "freely to be enjoyed." Lord Mansfield remarked: "The testator has charged the estate with the payment of an annuity to his wife, so that he could not mean by the word 'freely' to give it free of encumbrance. The free enjoyment, therefore, must mean, *free from all limitations;* that it is the absolute property of the estate." In the will before us it is clear that the testator meant to give to Aaron the same interest in the plantation as in the personal estate bequeathed to him. In its ordinary sense it means the full and entire property. In that sense we have just seen that Lord Mansfield uses the words. So also Chief Justice TILGHMAN. He says in Morrison *v.* Semple, 6 Binn. 97: "No technical words are necessary to pass a fee simple. Any expressions which show an intent to give an absolute estate are sufficient." Now the ulterior limitation over was of the portion of the deceased son, and that portion as we have seen was a fee. "Portion" according to the lexicographers

[Hope *v.* Rusha.]

has for one of the meanings "the part of an inheritance given to a child:" Johnson, Webster, Wharton. Upon failure of issue of Aaron at any time, the heirs of the survivors would be entitled to possession. There is nothing, therefore, in the will which indicates an intention to confine the dying without issue to the period of the death of Aaron. He took an estate tail with a contingent remainder in fee to his brothers if they should survive him. The nonsuit entered was therefore right. Judgment affirmed.