JACOB LONG ET AL. v. CATHARINE PAUL ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHUMBER-
LAND COUNTY.

Argued May 28, 1889—Decided June 28, 1889.

(*a*) A testator devised to his widow the "improvement and income" of his realty, "to keep for her own use, as long as she keeps my name." A subsequent provision directed that the widow should pay testator's debts, and if necessary should sell part of the realty for this purpose and keep the rest.

(*b*) Another provision directed that in case the widow re-married, she was to have "the one half of all my real and personal property for her own use, and the other half I bequeath to my three sisters;" and in case such division could not be made without spoiling the whole, the executor should sell the property and "divide money as directed."

1. Taking the whole will together, it created an estate for life determinable on the second marriage of the devisee: Cooper v. Pogue, 92 Pa. 254; and the devise was not enlarged by the subsequent provisions for the payment of debts and for the division of the property on the widow's re-marriage.

2. Upon a case stated, for the purpose of construing a will, it is not error for the court in its opinion to refer, by way of illustration and in confirmation of its views, to certain clauses in an auditor's report made in a previous cause under the same will.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 433 January Term 1889, Sup. Ct.; court below, No 57 February Term 1888, C. P.

On December 26, 1888, Catharine Paul, et al., children and a grandchild of Cornelius Maurer, deceased, brought ejectment against Jacob Long and Rachael, his wife, to recover certain realty of which the said decedent died seised. The cause was submitted to the court in the form of a case stated, which showed the facts following:

1. That the title for the land mentioned in the writ of ejectment in this case, was out of the commonwealth, on April 1, 1875.

2. Samuel Weary was the owner in fee-simple of said land, and on April 1, 1875, conveyed the same by deed to Cornelius Maurer, his heirs and assigns.

3. That Cornelius Maurer, the grantee in said deed, made, a will providing:

\*   \*   \*   \*   \*   \*   \*   \*

" As to such estate as it has pleased God to intrust me with, I dispose of the same as follows, viz. :

" I give and bequeath to my beloved wife Sarah Maurer, all my household furniture, my library in my mansion or dwelling house my cow and heifer and hogs chickens and all my carpenter tools and all grain and other personal property not mentioned also all moneys and money due me or hereafter may come due to be collected by my beloved wife Sarah Maurer herein named as soon after my deceased as can be consistently with a property settlement of all my debts ; and to have an to hold the same to her and assigns, and I also give devise and bequeath to her my said wife Sarah Maurer all my improvements and income of my messuage and lot and house where I now live and all that peace of land where Samuel Weary lived now deceased bud now occupied by his wido Catharine Weary on which a dwelling house and barn is on containing 93 acres more or less with its appurtenances ; and all that piece or parcels of land situated &c here described on the South by Mahanoy Creek on the West by Benjamin Kness and others on the North by land of the estate of Thomas Henninger on the east by lands of Amos Vastine and my beloved wife Sarah Maurer is to pay all my debt and if she cannot pay it she shall sell so much of the land to pay for the rest of the land and keep it for her one youse, as long as she keeps my name and after she marries and dound keep my name any more she shall have the one half of all my real and personel property for her own youse and the other half I beques to my 3 sisters share and shore alike Catharine intermarried to Elias Paul, Sellome intermarried with John Groh, Lusina intermarried with Joseph B. Becker.

" Lastly I appoint my esteemed friend Jarred Henninger to be the executor of this my last will and testament after my beloved wife Sarah Maurer dound keep my name my above executor shall thevide it to my wife the one half of all real

and personall property and the other half to my three sisters share and share alike if can be devided without spoyling the hole if spoyling the hole he shall selling it at public sale and divided the money is directed in witness whereof, I Cornelius Maurer the testator have to this my will written on one sheet of paper set my hand and seal this tenth day of September A. D. one thousand eight hundred and seventy eight."

4. That the testator died on September 21, 1878, and the will was probated on October 9, 1878, and letters testamentary granted to Jarred Henninger, the executor named in the will.

5. The testator left surviving, Sarah Maurer, his widow, (no children,) and the three sisters named in the will, to wit: Catharine, intermarried with Elias Paul; Salome, intermarried with John Groh, and Lucina, intermarried with Joseph B. Becker; Lucina and her husband, Joseph B. Becker, both died since the death of the testator, and left, surviving, James D. Becker, a son, who with the other two sisters are the plaintiffs in this case.

6. That Sarah Maurer, his widow, did not re-marry, but died as the testator's widow, and she left surviving her Jacob Long, father, and Rachael Long, mother, and brothers and sisters, who are in possession of the premises mentioned in the writ of ejectment.

7. If the court be of opinion that the title and right of possession to the land described in the writ of ejectment, (which is made part of this case stated,) vested, upon the death of the testator or his widow, in the plaintiffs under the intestate laws, then judgment to be entered in favor of the plaintiffs. If, however, the court be of opinion, that a fee passed under the will to the widow, then judgment to be entered for the defendants for the premises mentioned in the writ. The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein.

On March 7, 1889, the court, ROCKEFELLER, P. J., filed the following opinion:

The question in this case is whether under the will of Cornelius Maurer, the testator, his widow took an estate in fee, or a life estate, or during widowhood only. If she took a fee, then the defendants, who are her heirs, are entitled to recover

the land in question; but if she took a life estate or during widowhood only, then the plaintiffs, who are the heirs of the testator, are entitled to recover.

It is alleged that the scrivener, a justice of the peace, who wrote the will, was an uneducated Pennsylvania German, and this is abundantly manifested throughout the whole will; but still, we think that it was the intention of the testator to give his widow an estate, to remain hers so long as she should be or remain unmarried, after his decease. Such intention is pretty clearly expressed.

When a testator gives all his real and personal estate to his widow, as long as she shall remain unmarried and his widow, these are words of limitation which clearly show it to have been the intention to limit the duration, at longest, to the natural life of the widow. They can mean no more than during widowhood. In such a case, where there is no devise over, the remainder goes to the heirs under the general inheritance laws. Even a power to sell does not enlarge the estate to an absolute fee. Such authority confers only a power and not property: Cooper v. Pogue, 92 Pa. 254.

In the case now before the court, in the first place, the will gives the widow and her assigns, all the personal estate, and as regards the real estate, it gives it to her as follows : " And I also give and bequeath to her, my said wife, Sarah Maurer, all my improvements and income of my messuage, and lot and house where I now live, (being the land for which this eject- ment is brought, and also other lands therein described,) and my beloved wife, Sarah Maurer, is to pay all my debt, and if she cannot pay it, she shall sell so much of the land to pay for the rest of the land, and keep it for her one youse as long as she keeps my name." Then follows a direction as to what shall be done, in case the widow marries again, or does not remain his widow, which is as follows : "And after she marries and dound keep my name anymore, she shall have the one half of all my real and personal estate for her own youse, and the other half I beques to my 3 sisters share and share alike, Catharine inter- married with Elias Paul, Sellome intermarried with John Groh, Lusina intermarried with Joseph B. Becker." Then after the appointment of an executor, the will further reads as follows : " After my beloved wife Sarah Maurer dound keep my name

my above executor shall divide it to my wife, the one half of all real and personal property and the other half to my three sisters share and share alike if can be divided without spoiling the hole if spoiling the hole he shall selling it at public sale and divided the money is directed."

It is strenuously contended, on the one hand, that under the said latter parts of the will, in case the widow had re-married, she would have taken an estate in fee in the one half of the land, or in case of a sale, one half of the proceeds absolutely; and that that being the case, it follows that the testator intended to vest a fee in the whole of the land in the widow, in the first instance. [On the other hand, it is argued, and it was so held by the learned auditor, that by the said latter clauses it was only intended that in the event of the widow re-marrying she should have the one half of the real and personal estate "for her own use;" that is, to be used by her during life.] [3] As the widow did not re-marry, no question of that kind arises in the case, except so far as the whole will must be taken together in order to ascertain the intention of the testator.

It is well settled as a general rule of law, that a devise of the rents, issues and profits of land, is equivalent to the devise of the land itself, but the intent to dispose of land is not usually manifested by disposing of the income, rents, and use only thereof; and in such cases, it has always been held that the devisee only takes the land for such length of time as he is given the income, rents and profits: France's Est., 75 Pa. 220. In the present case, it being clear that the will only gives the improvement and income of the land, or the land itself to the widow, for her own use during widowhood, which would mean, at the longest, during the natural life of the widow, I am of opinion that it by no means follows that the latter clauses giving her the one half of the estate for her own use, or the one half of the proceeds of a sale in case of re-marriage, necessarily enlarges the life estate given in case she remained unmarried. The one is a provision in case the widow remained unmarried, and the other a provision in case she re-married.

I think it is quite likely that the scrivener intended to create a life estate only in the one half of the whole estate in case the widow re-married, but perhaps he has not clearly so expressed

it. Looking at the whole scheme of the will, nothing would seem more natural. The meaning of the will in this respect may be doubtful, but in that case the construction is to be as conformable as possible to the general rules of inheritance: France's Est., supra. If the contention of the plaintiffs is correct, the land goes to the parties who would be entitled to the same under the general inheritance laws of the state; but, if the construction contended for by the defendants should be adopted, it would go to parties who are entire strangers to the blood of the testator. [The same construction contended for by the plaintiffs, it seems, was put upon the will by the widow herself, when a part of the proceeds of sale of some of the land sold by the executor and the widow, for the payment of debts, was distributed by the Orphans' Court of this county. See report of W. B. Faust, Esq., auditor, filed January 7, 1884, and the opinion of the court, confirming the same, filed April 7, 1884.] [3] The learned auditor gave her the interest on the proceeds, which represented the land, and she expressly declined, in writing, to accept.

I am of opinion that the title and right of possession of the land described in the writ of ejectment, admitted at the argument to be the same land described in the will as the messuage and lot and house where the testator lived, vested upon the death of the testator and his widow, in the plaintiffs, the heirs of the testator, and therefore, judgment in favor of the plaintiffs.

Exceptions to the foregoing decision were dismissed by the court, whereupon the defendants took this writ, specifying that the court erred:

1, 2. In entering judgment on the case stated in favor of the plaintiffs.

3. In considering matters not part of the case stated or facts admitted upon which the court was to pass and enter judgment. [  ] [3] [3]

*Mr. S. B. Boyer*, for the plaintiffs in error.

*Mr. Chas. B. Witmer*, for the defendants in error.

OPINION, MR. JUSTICE MITCHELL:

The draughtsman of this will had a very limited command of the English language, and even this was evidently hampered by the recollection of the form book. But taking the whole will together the testator's intention is reasonably clear to give his wife the use and income of his whole estate so long as she remained his widow, and of half of it in case she re-married, but not in either event to give her more than a life estate in the realty. The lands are expressly given to her " to keep for her own use, as long as she keeps my name," which is plainly a gift during widowhood, and therefore, an estate for life determinable on a second marriage. In this regard the case is not distinguishable from Cooper v. Pogue, 92 Pa. 254, and indeed is by no means so strong a case for plaintiffs in error's contention as that was.

The first devise as to realty is of the "improvements and income" of his dwelling house, and it is conceded that these words in general carry the land. But the gift of the improvements and income is only "so long as she keeps my name," and cannot be more effective than a gift of the land itself, which, expressed in those terms, would not extend beyond a life estate.

Nor is this estate enlarged by the provision that she shall pay the debts, and if she cannot (otherwise) she shall sell so much of the land as will enable her to keep the rest. This is only a power, not an estate, and is limited to the payment of debts, thus merely enabling the devisee to do in her own way what the law would do compulsorily for her without this provision. So far indeed as this clause of the will bears upon its construction at all, it would seem to indicate that the testator himself did not intend to give a fee; for, if he had done so, the power of sale would have been superfluous, except as a matter of convenience on account of the possibility of the determination of the estate by a second marriage.

But after the devise to the widow so long as she remains unmarried, there is a provision for the case of her re-marriage, in which event she is to have " the one half of all my real and personal property for her own use, and the other half I bequeath to my three sisters " etc., and the further provision that the executor shall make the division, and if it cannot be done without spoiling the whole, then he shall sell the property and

"divide the money as directed;" and it is argued that this is a gift of the corpus of one half in case of re-marriage, and therefore, unless the first estate was a fee, a larger provision in case of second marriage than in the event of remaining a widow, which would be clearly contrary to the testator's main intent. While a fee in one half would probably have been called by the early lawyers an estate of higher dignity than a life estate in the whole, I am not aware of any rule which would enable us to say as a matter of law that it was a larger or more favorable provision for a widow. That is a question of fact which depends on circumstances, and must always be largely a matter of individual choice. But it is by no means clear that this is the proper construction of the provision in case of re-marriage. On the contrary the repetition of the phrase "for her own use" seems rather to be meant to continue the idea of a life estate contained in the preceding clause, and if so, the direction to the executor to make the division of the property, and if that cannot be done, to sell, and divide the money, would be subject to the same limitation, to wit, to her own use for life. As the widow however did not re-marry, our only concern with these parts of the will is their bearing on the construction of the previous clause, and as to it they give us very little light.

On the whole will, even if the intent to give only a life estate were more doubtful than it is, we could not distinguish this case from Cooper v. Pogue, already cited. With variations of language the substance of the gifts is identical, and while will cases are rarely precedents for more than the principles they illustrate, yet where there is such substantial identity, not only in intent but in expression, the prior case is at least very strong confirmation of the correctness of the view we have taken of the present. And the same remarks apply with great force to the notably analogous case of Nash v. Simpson, 78 Me. 142.

The learned judge below gave the true construction to the will, and we do not think his reference to the auditor's report, etc., in a previous cause under the same will, was going outside of the case stated for facts, but only a reference by way of illustration and confirmation of his views, to an authority that was necessarily very pertinent.

Judgment affirmed.