Mary Redding and Cornelius N. Redding her Husband in Right of Said Mary Redding, v. William H. Rice, Appellant.

| | |
|---|---|
| 171 | 301 |
| 190 | 612 |
| 171 | 301 |
| 212 | 640 |
| 171 | 301 |
| 29 SC | 610 |
| 171 | 301 |
| f218 | 187 |
| 171 | 301 |
| 40SC | 82 |
| f40SC | 84 |

*Will—Devise to wife during widowhood—Fee—Contingent interest.*

Testator by his will directed as follows: "I will and bequeath all my real and personal property to my beloved wife Mary, to have and to hold the same for her own proper use and behoof, as long as she shall remain my widow, and if she should get married then she shall only be entitled to the one-third in said property, the balance, being two-thirds to my youngest daughter, Kate, and if the said Kate should die, then I will and bequeath the two-thirds to my son, William, and if both should die then the residue remaining shall be equally divided among my remaining children." *Held* (1) that the widow took a fee in the whole estate, defeasible as to two thirds upon her remarriage; (2) that the widow not having remarried a conveyance by her in her lifetime gave, after her death, an indefeasible estate to her grantee.

Argued April 25, 1895. Appeal No. 419, Jan. T., 1895, by defendant, from judgment of C. P. Blair Co., June T., 1893, Nos. 175 and 176, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment for one sixth interest in a lot of ground on Mary street in Altoona. Before BARKER, P. J., of the 47th district, specially presiding.

At the trial it appeared that Thomas Rice, of Altoona, died

in 1866, leaving to survive him a widow and six children. In his will, dated the day before his death, he provided as follows : " I will and bequeath all my real and personal property to my beloved wife, Mary, to have and to hold the same for her own proper use and behoof as long as she shall remain my widow, and if she should get married then she shall be only entitled to the one-third in said property, the balance, being two-thirds to my youngest daughter Kate; if the said Kate should die then I will and bequeath the two-thirds to my son William, and if both should die then the residue remaining shall be equally divided among my remaining children under the rules and regulations and construction of the orphans' court controlling all estates under will and intestate estates to be so divided as the judges of the orphans' court shall decide according to law."

Mary Rice, the widow, did not remarry, and during her lifetime she conveyed part of the land, of which her husband died seized, to her son, Wm. Rice, the defendant in this suit, and another part to Kate Clohessey, a daughter, and both built houses on the lots purchased by them; after her death Mrs. Nally and Mrs. Redding, two of the children of Thomas Rice, brought ejectment against the parties above named, alleging that Mary Rice took but a life estate in her husband's real estate under his will, and could not convey a fee to the purchasers ; the defendant contended that she took a fee.

The court charged the jury in part as follows :

[After carefully considering the terms of this will and the authorities bearing upon the construction of wills, we have concluded to say to you, as a matter of law in these cases, that she took only a life interest in the property ; and that, therefore, a person who purchased from her in her lifetime, as did this defendant, would take no title as against the other heirs of Thomas Rice.] [3] This is purely a question of law, with which you have nothing to do. The duty is incumbent upon us to construe this will, and, if we are in error in our construction of it, we can be reviewed in a higher court and the parties set right in the premises.

Now, if that were all that there is in these cases, those parties would have no title whatever, and it would be your duty, under our instructions, to render verdicts for the plaintiffs ; but the defendant says that, even supposing we are correct in

our construction of this will, he was placed in his present position by the acts and conduct of these plaintiffs, and that it is now too late for them to say that the defendant has no title. In other words, he says that, by the conduct of Mrs. Redding and Mrs. Nally, either by their positive acts or by their silence, he was induced to buy this property and put valuable improvements thereon, and he, therefore, invokes what is known in law as an estoppel.  He says that even though his title would not be good under the will of Thomas Rice, and even though the position of the plaintiffs is correct, that it is too late now for the plaintiffs to come here and assert themselves, because it was by their encouragement that they made these valuable improvements on this land and that, therefore, they should not now be permitted to take advantage of their silence.

[The Supreme Court have laid down, in precise language, the principles which govern such a case as this.  The general principle now is that where the conduct of a party has been such as to induce action by another he shall be precluded from afterwards asserting to the prejudice of that other the contrary of that which his conduct has induced him to believe.  The primary ground of determination is that it would be a fraud in a party to assert what his previous conduct had denied, when, on the faith of that denial, others have acted.  If the conduct of these plaintiffs was such as to induce action on the part of this defendant, they cannot now take advantage of the situation in which the others are placed and recover this land.  You will observe that in this definition which we have given you, the conduct of the parties must have induced the other party to take action, and the law is, on questions of this kind, that unless there had been something in the conduct of the parties, on the faith of which the other party relies, he is not estopped from asserting the rights which the other party claims he has waived by his conduct.  Now, apply that principle to the case of William Rice.  William Rice goes on the stand and testifies that when he bought this property he relied on the strength of his mother's title, and in plain and conclusive language asserts that this action was not induced by anything that the plaintiffs in this case did.  As a plain and simple proposition of law it seems to us that that ends his case.  If, when he went there and bought this property and built on it, he did so because he

believed that his mother had a good title, and there was nothing in the acts or conduct of these parties that induced him to make these improvements, then there is nothing which would defeat their title to the land.    We feel entirely clear as to this proposition, and, therefore, as to these cases in which William Rice is the defendant, we sustain the motion of the plaintiffs' counsel and direct that you render verdicts in favor of the plaintiffs.] [4]

Verdict and judgment for plaintiffs.

*Errors assigned*, among others, were (3, 4) above instructions, quoting them.

*Thomas H. Greevy*, of *Greevy & Walters*, for appellant.

The construction given to a will and acquiesced in by the parties interested therein for many years will not be disturbed, especially in a case of doubtful construction : Hagerty v. Albright, 52 Pa. 274.

In the construction of wills the law, in doubtful cases, leans against a construction which converts a fee simple into a life estate : Smith's App., 23 Pa. 9; Fulton v. Fulton, 2 Gr. 28.

*George B. Orlady*, *O. H. Hewit* with him, for appellees.—The widow's interest was only a life estate at best, and would have been reduced to a life estate in one third only had she remarried: 2 Black Com. 105; Long v. Paul, 127 Pa. 456 ; Cooper v. Pogue, 92 Pa. 254.

OPINION BY MR. JUSTICE MITCHELL, October 7, 1895 :

It is unquestionable that Mary Rice the widow would only have taken a life estate at common law.    But under our wills act of 1833 the whole estate passes by a devise without words of inheritance unless the intention of testator appears to have been to devise a less estate.    The testator here devised to his widow "for her own proper use and behoof, as long as she shall remain my widow," which are apt words to create a life estate and would certainly have done so had the will stopped here.    But it did not.    It continued "and if she should get married then she shall only be entitled to the one third in said property, the balance being two-thirds, to my youngest daugh-

ter Kate, and if the said Kate should die then I will and bequeath the two-thirds to my son William, and if both should
die then the residue remaining shall be equally divided among
my remaining children." These words develop the testator's
intention. If the widow should marry, then she shall only
have one third, and the balance, two thirds, is to go to Kate,
and in fee simple, for there is no limitation of any kind expressed, and the presumption raised by the statute must prevail. But "if Kate should die"—meaning, certainly, die before
the happening of the contingency which would divest the
widow's estate in the whole, then the two thirds which would
have gone to Kate if she had been living, would go to William,
and if both Kate and William should die, i. e. before the
widow's marriage, in that case, and only in that case would the
"residue remaining," i. e. the two thirds, go to the other children. But if the two thirds that were to go alternatively to
Kate or to William, were to be in fee, then the other third
which was to remain to the widow must also be in fee. The
testator gives both in the same sentence, and in the same distribution of his property, with no distinction as to the quantity
of the estate in either case, and no suggestion of a devise over
of his widow's third after her death. Nor is there any hint of
a devise over of the whole estate, after the widow's death, if
she does not remarry. On her remarriage then her estate is to
be reduced to a fee in one third, and this certainly implies that
the prior estate in the whole, which is thus reduced was also
a fee.

The plaintiff's construction would make the testator die intestate as to the fee, a construction which is never to be favored
in cases of doubt, and which in this case would be irreconcilable with the unquestionable contingent devise in fee to Kate
and William. Moreover, if the testator intended to die intestate in regard to the fee in case his widow did not marry again,
then the fee would go to all his children equally. But if she
did marry then he has clearly provided that the fee in two thirds
shall go to Kate or to William, and only in case of the death
of both of them, does any part of the two thirds go to the other
children. Why this distinction? Why should the share of
Kate or William be disproportionately increased, and that of
the other children reduced, by the circumstance of the widow's

remarriage, over which none of them had any control? No
reasonable explanation suggests itself for such a result. But
if we take the other construction the difficulty disappears; the
fee is in the widow as to the whole estate (and it is to be noted
that the testator blends realty and personalty together), subject
to a reduction to one third on her remarriage, in which case
the two thirds then undisposed of are specifically given to Kate
or William in succession.

. Taking the entire clause of the will together it shows that
the testator's intent was to give his whole estate to his widow
in fee, subject to a condition that she should not marry again,
and defeasible as to two thirds upon the breach of that con-
dition.

. The learned judge below thought the interpretation of the
language of this will was governed by that in Cooper v. Pogue,
92 Pa. 254, and Long v. Paul, 127 Pa. 456. In so far as the
devises were to the testator's widow so long as she remained
such, and in the latter case with a reduction upon her second
marriage, the cases are closely alike, but in neither of those
cited was there the additional language to be found in the will
of Thomas Rice, which as already said develops his intention
as to the quantity of estate that he intended to give, and enlarges
the life estate to which the first gift would have been limited
had it stood alone. Precedents are of little value in the con-
struction of wills, because when used under different circum-
stances and with different context, the same words may express
different intentions. When the intent of the testator, and by
that is meant his actual intent, can be fairly gathered from his
words, the fact that another testator has used the same words
with a different meaning is of no avail. Neither precedents
nor rules of construction can override the testator's expressed
intent.

The question of estoppel does not arise. As the widow took
a fee, which though defeasible was never defeated, the plain-
tiff never had any title at all, and the verdict should have been
directed for defendant.

. Judgment reversed.