# Koble *v.* Bennett, Appellant.

*Will—Construction—Devise to wife—Life estate—Fee simple.*

Where a testator gives and bequeaths to his wife the residue of his "personal property and real estate absolutely, to have and to hold the same for her own use and benefit, so long as she shall remain unmarried, and if she shall marry again, then she shall be restricted to such estate therein as she would have been entitled to if I died without a will," and the widow dies without having married, she dies seized of an estate in fee simple in the real estate.

Argued Feb. 23, 1909. Appeal, No. 17, Feb. T., 1909, by defendant, from judgment of C. P. Clinton Co., Oct. T., 1907, No. 119, on verdict for plaintiffs in case of Harrison Isaac Koble et al. v. Moses F. Bennett. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Ejectment for a house and lot in the borough of Mill Hall. Before HALL, P. J.

The opinion of the Superior Court states the case.

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* were in giving binding instructions for plaintiffs, and subsequently in refusing judgment for defendant non obstante veredicto.

*W. C. Kress,* with him *H. T. Hall,* for appellant.

*R. B. McCormick,* for appellees.

OPINION BY RICE, P. J., July 14, 1909:

The question presented by this appeal is what estate did Maggie E. Koble take under the following clause of her husband's will: "Third: After the payment of the debts and expenses above mentioned, I give and bequeath to my wife, Maggie E. Koble, the residue of my personal property and real estate absolutely, to have and to hold the same for her own use

and benefit, so long as she shall remain unmarried and if she shall marry again, then she shall be restricted to such estate therein as she would have .been entitled thereto if I had died without a will." The testator died without issue and the widow remained unmarried until the time of her death.

1. If, as the learned judge of the orphans' court held, the word "absolutely" must be construed as referring to the personal property only, the judgment entered by him was right. But we are unable to find support for this construction in the language of the gift or in any of the authorities cited. In Cooper v. Pogue, 92 Pa. 254, it was pointed out by Mr. Justice MERCUR that in the paragraph of the will then under construction the words "I give" were used twice, once before the use and product of the real estate were devised, and once after the personal estate was specified. Speaking of the latter gift, he said: "How does he give it? Not as he has given the products of the land so long as she remains his widow, but 'to be hers and to belong to her for ever.' The distinction is thus clearly made between the real and the personal estate. The former is given to her for life, the latter for ever. This view gives effect to the letter and spirit of the will. It would be giving an unnatural interpretation to the clause to say the latter 'I give' refers to the use and products of the lands. They had already been given in distinct and appropriate language." It was in that case possible to show by the very language of the separate and distinct gifts that the testator intended the words "to be hers and belong to her for ever," following the gift of the personalty, to relate to and characterize that gift only. In the will now under construction no such distinction was made. The testator blended the residue of the real and personal property in one gift and gave both absolutely, one as absolutely as the other. It is thus seen that neither the ruling nor the reasoning of Cooper v. Pogue gives support to the construction which would restrict the word to the gift of the personalty. The intention of the testator to give to his wife the same interest in the real estate as in the personalty is clear, and as will be seen by a perusal of some of the cases hereafter cited this is an important consideration.

2. We come then to a consideration of the position taken by counsel for the appellee. Speaking of the words, "I give and bequeath to my wife Maggie E. Koble the residue of my personal property and real estate absolutely," counsel frankly admits that words could not have been employed which would be better fitted to give the whole estate absolutely to the wife or which would more clearly express the intention. In making this admission counsel did not go beyond the doctrine of decided cases construing wills executed even prior to the Act of April 8, 1833, P. L. 249, sec. 9. In Hope v. Rusha, 88 Pa. 127, the language of the devise was: "I give and bequeath to my son Aaron the plantation whereon I now live absolutely" and this was immediately followed by a bequest to the same person of certain articles "absolutely." Mr. Justice SHARSWOOD said: "Still as to wills executed prior to that act if there is enough to indicate the intention of the testator to give a fee—no technical words are required." In support of this proposition he cited Loveacres v. Blight, Cowp. 352, wherein speaking of a devise of land "freely to be enjoyed" Lord Mansfield remarked: "The testator has charged the estate with the payment of an annuity to his wife, so that he could not mean by the word 'freely' to give it free of encumbrance. The free enjoyment, therefore, must mean, free from all limitations; that it is the absolute property of the estate." Judge SHARSWOOD then proceeds: "In the will before us it is clear that the testator meant to give to Aaron the same interest in the plantation as in the personal estate bequeathed to him. In its ordinary sense it means the full and entire property. In that sense we have just seen that Lord Mansfield uses the words. So also Chief Justice TILGHMAN. He says in Morrison v. Semple, 6 Binn. 94: 'No technical words are necessary to pass a fee simple. Any expressions which show an intent to give an absolute estate are sufficient.'" But says counsel, the words "to have and to hold the same for her own use and benefit so long as she shall remain unmarried" are words of limitation, and the widow therefore took a life estate, because her interest might possibly last for life, while yet remaining liable to be determined sooner on the happening of the contingency of her remarriage. The words would be so con-

strued if there were nothing in the will to justify the conclusion that the testator intended differently: Cooper v. Pogue, 92 Pa. 254; Long v. Paul, 127 Pa. 456; Redding v. Rice, 171 Pa. 301; Long v. Hill, 29 Pa. Superior Ct. 606. But the words have no such technical or legal signification when employed in a will as will prevent the courts from carrying out the actual intention of the testator to give a fee subject to being cut down upon the happening of the contingency, if such intention is discoverable upon a fair construction of the whole will. This is very clearly shown by Redding v. Rice, 171 Pa. 301, where the words were, "I will and bequeath all my real and personal property to my beloved wife, Mary, to have and to hold the same for her own proper use and behoof as long as she shall remain my widow." The first inquiry that a reading of the entire paragraph now under construction naturally suggests is this: If the testator intended to give a life estate only, and to die intestate as to the remainder, why did he use the word "absolutely"? We can find no answer to that question in the context. The word may as well have been omitted, if such had been his intention; the widow's right and dominion during widowhood would have been as complete without it as with it. But before treating the word as superfluous we must endeavor to give it effect if we can do it without rejecting the subsequent words, or distorting them or wresting them from the meaning the testator intended them to have. The case of Oswald v. Kopp, 26 Pa. 516, is an apt illustration of the general rule that in the construction of an instrument of writing effect is to be given, if possible, to all of its language, because it was applied in the interpretation of the word "absolutely." There the testator gave to his wife, Louisa, "so much of my land and personal estate as the law allows her under the intestate laws of Pennsylvania absolutely." After giving a small legacy to another the testator gave the residue of his estate to his wife for life, remainder to a brother and sisters, share and share alike. He died without issue. The court said: "If the word 'absolutely' had been omitted from the devise, the widow would have taken a life estate only in the quantity allowed by the intestate laws. But the insertion of that word in the will shows that the testator intended to give her a

fee simple. To hold that she took merely a life estate is to give no effect whatever to a word of known significance. There are other reasons in support of this construction, but it is not necessary to state them, as the case is a clear one." We do not cite this case as authority for the proposition that the word "absolutely" must always be construed in a will as giving a fee, but as showing that according to its ordinary and well-known meaning it is sufficient to carry a fee, and is of the highest significance in determining whether such was the intention of the testator. This has been recognized in many cases cited in the brief of appellant's counsel where the word has come up for interpretation. But, to quote the language of Justice STRONG: "No principle is better settled than that if a testator in one part of his will give to a person an estate of inheritance of lands, or an absolute interest in personalty, and in a subsequent passage unequivocally shows that he means the devisee or legatee to take a less interest only, the prior gift is restricted accordingly:" Sheets's Estate, 52 Pa. 257. This statement of the principle is in entire harmony with the rule as thus stated by SHARSWOOD, J., in Mickley's Appeal, 92 Pa. 514, and recognized in numerous cases both before and since. "The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life, or what is practically the same thing, to be subjected to an executory gift over upon the occurrence of the contingency of death or death without issue at any future period within the rule against perpetuities without clear evidence of such an intent." Here the testator died without issue. His wife was the principal object of his bounty. In disposing of his estate he blended his real estate and personal property and gave the entire residue, after payment of his debts and funeral expenses, to her in terms which, without the aid of the act of 1833, would carry a fee, and he made no devise over after her death. This, therefore, is a plain case for the application of the principle that the absolute estate of the principal object of the testator's bounty is not to be cut down to an estate for life without clear evidence of such intent. It is not necessary to reject the words which follow this gift of an absolute estate, in order to hold that the

widow took more than a life estate. There is much less reason for holding that the testator used them in a technical sense than for holding that he used the word "absolutely" in a restricted sense, or had no definite idea of its meaning. The testator had one contingency in mind, and the will does not show that he had any other, upon the happening of which he intended that her absolute estate should be cut down to the interest the intestate laws would give her, and that was her remarriage. The words "so long" are not uncommonly used in ordinary speech in the sense of "if" and "provided." Accordingly, where a testator devised all his estate, real, personal and mixed, to his wife "and her heirs and assigns forever so long as she remains my widow" and she died without having remarried it was held that she took a fee: Scott v. Murray, 218 Pa. 186. This conclusion was not reached by construing the words "so long as she remains my widow" as repugnant to the grant, and therefore rejecting them, but by construing them in connection with the grant as attaching a condition. The court said: "These words, however, do not indicate any intention to cut down the quantum of estate granted, which is never done except in obedience to a clear intent. No such intent is expressed here. On the contrary, the words are equivalent to saying 'provided she remains my widow,' and instead of cutting down the estate, merely attach a condition which made it defeasible in toto on a breach. The widow not having remarried died seized in fee." In the present case the testator did not use words of inheritance, but he as clearly expressed his intent that his widow should have the entire residue of his real and personal property absolutely as if he had used such words, and therefore the principle is applicable. If the case is not as strong for a fee as that case it certainly is as strong as Redding v. Rice, 171 Pa. 301.

The judgment is reversed, and judgment is now entered for the defendant.