## Freeman's Estate.

*Wills—Construction—Words importing death.*

1. Under a clause in a will directing the apportionment of shares in the income of a trust estate to testator's children, "the lawful issue of any deceasing child to be entitled to their parents share equally *per stirpes*, and the shares of any deceasing child leaving no lawful issue to increase the shares of the survivors and the shares of issue of deceasers" in certain proportions, the word "deceasing" refers to death in the lifetime of the testator as distinguished from death at any time during the life of the trust.

*Trustees and cestuis que trust—Assignment by cestui que trust to director of trustee corporation as agent for another corporation.*

2. A, who was a director in the G. Company, trustee for certain interests created by will, purchased the interests of certain of the *cestuis que trust* in the trust fund, acting for another corporation, which furnished the consideration money, he himself having no financial interest in the transaction: *Held*, that in the absence of fraud the assignments were good.

*Semble.* A director of a trustee corporation is not within the rule forbidding those in confidential relation to purchase the interests of the beneficiaries of a trust, as no such confidential relation exists between the director and the beneficiary: per Henderson, auditing judge.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1881, No. 228.

The facts appear from the opinion of the court *in banc* and from the following extract from the adjudication of the auditing judge (Henderson, J.), who said:

"Warwick B. Freeman and Mrs. Virginia L. F. Grant, children of William H. Freeman, the distributing of whose one-sixth share is now being considered, objected to the assignments which they had given to Henry Tatnall of their respective shares in the estate, on the ground that Mr. Tatnall, at the time he took the assignments, was a director of the Girard Trust Company, and, hence, was within the rule forbidding those in confidential relation to purchase the interests of beneficiaries of the trust, at least without showing that they have made a full disclosure of every relevant fact. No authority was cited to me in which a director of a trustee corporation was held to be within the rule, and I know of none. The reason of the rule is founded on the confidential relations between the parties, and as no such confidential relation exists between a beneficiary and a director of a trustee corporation, I am of the opinion that the rule should not be extended to include such director.

"The distributees also contended that their interests were contingent, and, hence, the assignee had thrown upon him the burden of showing that the transaction was fair and conscionable. As I am of opinion that these interests were vested, I need not consider this question further.

"It was also contended on behalf of these distributees that the assignments were bad because it had been represented to them that they were executing mortgages upon their respective interests and not making a grant thereof. While each of these distributees testified to the fact that they thought they were executing a mortgage, when they were asked to explain the debt for which the mortgage was to be collateral security, they were unable to do so. The written assignments must be regarded as the consummation of their negotiations, and, as no adequate proofs were offered to set the same aside, they will be sustained and these distributees' respective shares will be awarded to the Real Estate Trust Company, the present holder of the assignments of their interests."

*John G. Kaufman* and *Henry A. Hoefler,* for exceptions.

*James Arthur Ewing* and *Frederick C. Newbourg, Jr.,* contra.

THOMPSON, J., March 28, 1924.—The questions raised by the exceptions before us can be classified as follows: First, those relating to the construction of the wills of Henry G. Freeman and James Black Freeman; second, the validity of certain assignments by various legatees; third, rulings of the auditing judge on offers of evidence respecting said assignments.

All of the questions raised by the above classification have been elaborately discussed, and in our judgment properly decided, by the auditing judge, and it would unduly prolong the discussion to further elaborate thereon in detail, but we may say that as to the construction of the will of Henry G. Freeman, deceased, we have adopted, and again adopt, the construction placed thereon by the Superior Court in Freeman's Estate, 35 Pa. Superior Ct. 185, and in 40 Pa. Superior Ct. 31, on proceedings taken by some of the children of Charles D. Freeman.

James Black Freeman, one of the children of Henry G. Freeman, by his will exercised the power of appointment given him under the will of his father by appointing his one-sixth interest to and among his children in the following language:

"I direct and appoint the said income to be apportioned among and paid over to my said children in the following shares and proportions namely. Three thirtieth parts or shares to my daughter Helen, widow of F. Carroll Brewster, of Philadelphia, three thirtieth parts or shares to my daughter Matilda, wife of Ernest Dusuzeau, of Nautire Seine, France. Five thirtieth parts or shares to my daughter Minnie Thomson Lee, formerly wife of Daniel W. Lee, three thirtieth parts or shares to my daughter Lena, widow of Lewin Lightfoot, eight thirtieth parts or shares to my said adopted daughter Mary Anne Williamson, eight thirtieth parts or shares to my son Robert C. Freeman, residing in St. Louis, Missouri, United States of America. The lawful issue of any deceasing child to be entitled to their parents share equally *per stirpes* and the shares of any deceasing child leaving no lawful issue to increase the shares of the survivors and the shares of issue of deceasers each in the same proportion as the respective shares of such survivors and issue bear towards one another in the original grant and at the death of the longest liver of my brothers and sisters when my said father's estate comes to be divided in terms of his said will among the persons receiving or entitled to receive the income thereof immediately prior to such death of such longest

4 D. & C.

liver of my brothers and sisters I direct that over whatever portion or share of said estate my own right of appointment extends the same shall be divided accordingily and that the proportions above allotted to each respective child as regards the said income shall in like manner apply to the capital or principal of my said father's estate."

It was argued that the use of the word "deceasing" only created contingent gifts to the children of James Black Freeman, and that they had to be living at the termination of the trust under the will of Henry G. Freeman in order to inherit. The auditing judge held that "deceasing" should be construed the same as if it was "deceased," and quoted in support thereof the general rule that after an absolute devise in fee, a provision that in case of the death of the devisee without issue or without issue living at the time of his death, or similar phrase, then over to another, is not a limitation or curtailment of the prior devise, but is alternative or substitutionary and could take effect only upon the death of the first devisee in the lifetime of the testator: Neubert v. Colwell, 219 Pa. 248.

The argument in favor of construing the word "deceasing" to mean death at any time during the life of the trust is plausible, but not convincing. We prefer to hold that where the death is not clearly referred to a particular time, the date of the death of the testator is the period to be fixed for determining the vesting of the estate.

Certain grandchildren of N. Chapman Freeman claimed that the construction of the will of Henry G. Freeman as above referred to is erroneous and that they are not bound thereby, and have taken an appeal to the Supreme Court from the confirmation of the third account of the trustees, which appeal has been argued, but no decision rendered as yet.

Various legatees have assigned their interests in the estate of Henry G. Freeman, deceased, to Henry Tatnall, who, in turn, has transferred them to the Real Estate Trust Company. The validity of these assignments and to the rulings of the auditing judge on numerous exceptions taken to the offers of evidence in respect thereto can be grouped under two heads: First, the interests assigned being contingent, the burden of proof was on the assignee to show the court that the transaction was fair in every respect: Baeder's Estate, 224 Pa. 452; second, that the law forbidding a trustee or one standing in a confidential relationship to purchase an interest in the trust estate should be extended to the case of a director in a corporation trust company who is a trustee of the estate in which the interest was assigned, and that Henry Tatnall, being a director in the Girard Trust Company, which was the trustee under the will of Henry G. Freeman, deceased, or his assignee, the Real Estate Trust Company, is required to convince the court that the transaction was fair in every respect.

The argument under the first heading being based on the theory that the interest assigned was contingent need not be elaborately discussed by us, for the reason that this court, affirmed by the Superior Court in the cases above referred to, has held that the interests were vested; and the argument based upon the second heading seems to be completely answered by the fact that the testimony does not disclose that Henry Tatnall purchased any interest for himself, but does show affirmatively that he was acting for the Real Estate Trust Company, which furnished the consideration money, and, further, that he had no interest whatsoever in the purchase. The fact that at the time Henry Tatnall purchased for the Real Estate Trust Company and took an assignment in his own name of the interests under discussion, the assignor did not know that he was not the actual purchaser, but that the Real Estate

Trust Company was, can have no bearing upon the point under discussion. It should be noted that there is no substantial allegation that the price paid by the Real Estate Trust Company, acting through Henry Tatnall, was inadequate, or that Henry Tatnall concealed any fact or deceived the assignors in any way whatsoever, or that Henry Tatnall possessed any information which was not well known to the assignors. The subject of the sale of the interests of the assignors was first brought to Mr. Tatnall's attention by the assignors themselves, and there is no substantial averment, much less proof, that the assignors did not receive full value at the time they parted with their interests.

All exceptions filed to the adjudication of the fourth account of the trustee under the will of Henry G. Freeman, deceased, are dismissed, and the adjudication is confirmed absolutely.